UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| DENNIS L. MIERKOWSKI and | ) | Case No. 08-44196-399 |
| REBECCA J. MIERKOWSKI, | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |

**OPINION DETERMINING TREATMENT OF CLAIM SECURED BY VEHICLE
PURCHASED FOR PERSONAL USE OF DEBTOR WITHIN 910 DAYS OF
BANKRUPTCY FILING WHERE THE AMOUNT FINANCED INCLUDES
FUNDS TO PAY NEGATIVE EQUITY IN TRADE-IN VEHICLE AND
DENYING CONFIRMATION OF DEBTORS' SECOND AMENDED PLAN**

The issue before the Court is the appropriate treatment in a Chapter 13 plan of a claim secured by a vehicle purchased for personal use within 910 days prior to the bankruptcy filing where the amount financed includes funds to pay the negative equity in a trade-in vehicle. On September 11, 2008, this Court conducted a hearing on the confirmation of the Second Amended Chapter 13 Plan ("Plan") filed by Debtors Dennis L. Mierkowski and Rebecca J. Mierkowski ("Debtors") and the Objection to the Plan filed by Ford Motor Credit Company LLC ("Creditor"). The Debtors and the Creditor were represented by counsel. The matter was submitted on stipulated facts. The Court took the matter under advisement and now issues this Opinion.

**FACTS**

On August 28, 2006, the Debtors purchased a 2006 Ford Fusion ("New Vehicle") for the purchase price of $22,444.00. The Creditor financed the Debtor's purchase of the New Vehicle. At the time of the purchase, the Debtors owned a 2005 Mazda ("Trade-In Vehicle") which they used as a trade-in vehicle when purchasing the New

1

Vehicle. The gross trade-in allowance on the Trade-In Vehicle in connection with the purchase of the New Vehicle was $13,750. At that time the Debtors owed Citizens National Bank ("Trade-In Lender") $21,820.65 secured by a lien on the Trade-In Vehicle. The difference between the gross trade-in allowance and the balance owed to the Trade-In Lender, also known as the negative equity, was $8,070.65. The negative equity of $8,070.65 was included in the amount financed by Creditor for the New Vehicle.

The Debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code on June 10, 2008, 682 days after purchasing the New Vehicle. The Creditor filed a secured claim in the amount of $22,654.00. The Debtors filed their Second Amended Plan proposing to bifurcate the Creditor's claim into two components: a secured component tied to the fair market value of the vehicle of $15,750 paid over sixty months with 6.08% interest for total payment of $18,305.00; and an unsecured claim for the balance due the Creditor.

The Creditor objected to the Plan, asserting that it's claim is entitled to treatment as a 910-day car claim under the hanging paragraph at the end of subsection (a)(9) of Bankruptcy Code Section 1325 which prohibits bifurcation of such a claim into secured and unsecured portions.[1] The Debtors argue that the hanging paragraph only protects

---

[1] At the end of subsection (a)(9) of Section 1325, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") added the following language:
> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day (*sic*) preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as

2

amounts financed for the purchase of the New Vehicle and that funds used to repay the negative equity in the trade-in vehicle do not fall within the ambit of Section 1325.

This Court must now decide what, if any, impact the inclusion of negative equity in a vehicle acquisition loan has on the claimant's rights under the hanging paragraph of Bankruptcy Code Section 1325.

## LEGAL CONCLUSIONS

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2)(L) and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri.

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

A chapter 13 plan cannot bifurcate a secured claim if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day period preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle acquired for the personal use of the debtor. Hanging paragraph of 11 U.S.C. § 1325(a). The parties do not dispute that the Creditor's claim was incurred within the 910-day period preceding the date the Debtors filed their bankruptcy petition, nor that the New Vehicle was acquired for the Debtors' personal use. They disagree as to whether the Creditor has a purchase money security interest in the New Vehicle because of the inclusion of the negative equity in the debt.

---

defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

11 U.S.C. § 1325(a). The additional language is unnumbered and has been referred to as the "hanging paragraph."

3

The Bankruptcy Code does not define "purchase money security interest" so courts generally refer to state law to determine if a creditor has a purchase money security interest securing its claim. *In re Weiser*, 381 B.R. 263, 266 (Bankr. W.D. Mo. 2007). In most instances, the courts look to the Uniform Commercial Code for guidance on the issue. Nonetheless, the results have been anything but uniform.

Courts are divided as to the impact of the inclusion of negative equity in a loan to purchase a vehicle acquired by a debtor during the 910-day period preceding the debtor's bankruptcy petition on the creditor's status as the holder of a purchase money security interest. Some courts hold that negative equity is part of the purchase price and therefore included as a component of the creditor's purchase money security interest claim within the hanging paragraph of Section 1325. See, e.g.*, Graupner v. Nuvell Credit Corp. (In re Graupner)*, 537 F.3d. 1295, 1301-03 (11th Cir. 2008); *In re Weiser*, 381 B.R at 270-71. Other courts hold that the negative equity component of a vehicle finance transaction does not constitute a purchase money security interest. See, e.g., *Americredit Fin. Servs., Inc. v. Penrod (In re Penrod)*, 392 B.R. 835, 846-52 (B.A.P. 9th Cir. 2008); *In re Callicott*, 386 B.R. 232 (Bankr. E.D. Mo. 2008); *In re Sanders*, 377 B.R. 836, 847-57 (Bankr. W.D. Tex. 2007)(listing cases on each side of issue at p. 845). These latter courts are further divided as to how they treat creditors with claims which include negative equity. Some courts follow the transformation rule and hold that the inclusion of negative equity transforms the debt such that it loses its purchase money status; however, this line of reasoning has not fared well on appeal. See, e.g., *In re Peaslee*, 358 B.R. 545 (Bankr. W.D. N.Y. 2006), *rev'd sub nom. Gen. Motors Acceptance Corp. v. Peaslee*, 373 B.R. 252 (W.D. N.Y. 2007); *In re Blakeslee*,

377 B.R. 724 (Bankr. M.D. Fla. 2007), *rev'd by In re Graupner*, 537 F.3d. 1295.  Other courts follow the dual status rule and divide the claim into secured and unsecured components.  See, e.g., *In re Penrod,*, 392 B.R. 835, 853-60 (listing cases following the dual status rule at 859); *In re Callicott*, 386 B.R. at 237.

Bankruptcy courts in Missouri are divided on this issue.  One court has concluded that negative equity is part of the purchase price included within the creditor's secured claim under the hanging paragraph of Section 1325(a).  *Weiser*, 381 B.R at 270-71.  Another has adopted the dual status approach, giving the creditor a secured claim within the ambit of the hanging paragraph of Section 1325(a) for that portion of the debt attributable to the acquisition of the vehicle financed and an unsecured claim for that portion of the debt attributable to the negative equity used to pay the debt on the trade-in vehicle.  *In re Callicott*, 386 B.R. at 237.

This Court looks to Missouri law to determine whether the Creditor has a purchase money security interest.  Missouri's version of the Uniform Commercial Code defines a security interest in goods as a purchase money security interest to the extent that the goods are purchase-money collateral with respect to that security interest.  Mo. Rev. Stat. Ann. § 400.9-103(b)(1).  Purchase money collateral is defined as goods that secure a purchase money obligation incurred with respect to that collateral.  Mo. Rev. Stat. Ann. § 400.9-103(a)(1).  Purchase money obligation is defined as an obligation incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used.  Mo. Rev. Stat. Ann. § 400.9-103(a)(2).

5

Comment 3 to Section 9-103 of the Uniform Commercial Code explains that the terms "price of collateral" and "value given to enable" as used in the definition of purchase money obligation in Section 400.9-103(a)(2) include obligations for expenses incurred in connection with acquiring rights in the collateral, sales taxes, duties, finance charges, interest, freight charges, costs of storage in transit, demurrage, administrative charges, expenses of collection and enforcement, attorney's fees, and other similar obligations.  The comment states that the concept of purchase money security interest requires a close nexus between the acquisition of the collateral and the secured obligation.  Mo. Rev. Stat. Ann. § 400.9-103, Comment 3.  This Court concludes that money advanced by the Creditor to repay debt on the Trade-In Vehicle is not part of the price of the New Vehicle.  There is no close nexus between the unsecured balance of the debt on the Trade-In Vehicle and the purchase price of the New Vehicle.  The fact that the Creditor opted to advance funds to pay the unsecured balance due on the Trade-In Vehicle as part of the loan for the acquisition of the New Vehicle does not create a close nexus between the two transactions; nor does the fact that the two transactions were documented in a single instrument.  The two components are separate; the negative equity in the Trade-In-Vehicle was not part of the purchase price for the New Vehicle.

The present situation is distinguishable from the *Weiser* case in which the court concluded that the negative equity was part of the purchase price for the new vehicle.  In *Weiser*, the debtor testified that she could not have purchased the new vehicle unless the automobile dealership took her old vehicle as a trade-in and financed the difference between what she owed on the old vehicle and what it was worth.  381 B.R. at 268.

From this fact the court found a close nexus between the acquisition of the new vehicle and the portion of the loan used to pay off the debt on the old vehicle. *Id.* In the present case there is no evidence that the Debtors could not have acquired the New Vehicle without trading in the Trade-In Vehicle and the Creditor paying off the balance due on the Trade-In Vehicle. Accordingly, no close nexus exists in the present situation between the negative equity in the Trade-In Vehicle and the purchase of the New Vehicle.

After concluding that the negative equity is not part of the purchase price for the New Vehicle, this Court must determine whether Missouri applies the dual status or the transformation rule.

Missouri statues answer the dual status versus transformation rule question in the non-commercial setting by adopting the dual status rule in transactions other than consumer goods transactions. Mo. Rev. Stat. Ann. § 400.9-103(f). Missouri statute expressly states that the limitation of the adoption of the dual status rule to non-consumer goods transactions is intended to leave to the court the determination of the proper rules in consumer goods transactions and that the court may not infer from the limitation the nature of the proper rule in consumer goods transactions; rather, the court may continue to apply established approaches in the consumer context. Mo. Rev. Stat. Ann. § 400.9-103(h). Comment 8 to Section 9-103 of the Uniform Commercial Code reiterates this concept and adds that the adoption of the dual status rule for non-consumer transactions is not intended to affect or influence characterization under other statutes and that whether a security interest is a purchase money security interest under other law is to be determined by that law. Mo. Rev. Stat. Ann. § 400.9-103, Comment

Case 08-44196    Doc 24    Filed 09/29/08    Entered 09/29/08 12:45:13    Main Document
      Pg 8 of 10


8. The Comment provides as an example the fact that decisions applying Section 522(f) of the Bankruptcy Code have applied both the dual status and the transformation rules. *Id.* The Comment states that the Bankruptcy Code does not expressly adopt the state law definition of purchase money security interest. *Id.* The Comment concludes that where federal law does not defer to the Uniform Commercial Code, the Uniform Commercial Code does not and could not determine a question of federal law. *Id.* While the Comments make it clear that the drafters of the Uniform Commercial Code did not intend to define terms used in other federal legislation such as the Bankruptcy Code, the Uniform Commercial Code is helpful in determining state law issues which often impact bankruptcy. This is especially true in the present case where this Court must look to Missouri law to determine whether the Creditor has a purchase money security interest.

Missouri courts have neither expressly adopted the dual status nor the transformation rule. *First Nat. Bank of Steeleville, N.A. v. Erb Equipment Co., Inc.*, 921 S.W.2d 57, 62 (Mo. App. E.D. 1996)("We do not find it necessary to adopt either of the competing rules in this case.") The *Erb* court determined that dual status is not appropriate unless the instrument creating the purchase money security interest clearly delineates the respective debts involved, which items of collateral secure its purchase money, and the amount of the payments which are to be applied against each purchase money portion of the instrument. 921 S.W. 2d at 63. The *Erb* case involved a non-consumer transaction and was decided prior to the enactment of the current language of Section 400.9-103 of the Missouri Revised Statutes Annotated in 2001. 2001 Mo. Legis. Serv. S.B. 288. Therefore it does not control the present situation. Nonetheless,

the *Erb* decision does provide some insight into the view of one Missouri court on the subject.

In the present situation, one can determine how much of the debt was purchase money debt and how much was not. Therefore application of the dual status rule is appropriate. The amount financed equaled the purchase price of $22,444.00 plus the negative equity of $8,070.65, for a total of $30,514.65. Seventy-four percent of the debt was purchase money debt and twenty-six percent was non-purchase money debt. Absent evidence to the contrary, this Court will assume payments were applied on a pro-rata basis to the purchase money and non-purchase money components of the debt. As of the petition date, the Creditor was owed $22,654.00. Seventy-four percent of the claim or $16,763.96 shall be allowed as a secured claim. Twenty-six percent of the claim or $5,890.04 shall be allowed as an unsecured claim. The Creditor's secured claim of $16,763.96 may not be bifurcated and is entitled to plan treatment in accordance with the hanging paragraph of Section 1325(a).

Finally, this Court must mention two early bankruptcy cases which applied the transformation rule to transform purchase money debt into non-purchase money debt. *In re Snipes*, 86 B.R. 1006 (Bankr. W.D. Mo. 1988), and *Parish v. Lincoln Fin. Co. (In re Parish)*, 147 B.R. 187 (Bankr. E.D. Mo.), were decided prior to the *Erb* decision and prior to the enactment of Missouri's current UCC provisions in 2001 and are factually distinguishable from the present case.

The Debtors' Second Amended Plan does not comply with this Opinion. Accordingly, confirmation of the Debtors' Second Amended Plan is DENIED.

The Debtors are granted leave to file a further amended plan in accordance with this Opinion no later than October 20, 2008.

DATED: September 29, 2008
St. Louis, Missouri

Barry S. Schermer
Chief United States Bankruptcy Judge

Copy to:

Kimber Houpt Baro
Bublitz & Baro
1113 Howdershell Rd.
Florissant, MO 63031

Melinda Joette Maune
Thomas Noonan, PC
701 Market St.
Suite 1400
St. Louis, MO 63101

John V. LaBarge, Jr
Chapter 13 Trustee
P.O. Box 430908
St. Louis, MO 63143

Office of U.S. Trustee
111 South Tenth Street
Suite 6353
St. Louis, MO 63102